STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 53-4-14 Vtec |
| Couture Subdivision Permit | JUDGMENT ORDER |

On July 7, 2015 the Court held a site visit at the subject property, 70 Locust Lane in the Town of Ferrisburgh, Vermont, and a subsequent full day merits hearing in this matter at the Vermont Superior Court, Environmental Division, at the Costello Courthouse in Burlington, Vermont. Property owner Jacqueline Couture, represented by James H. Ouimette, Esq., and Appellant Barry Estabrook, representing himself, were present at the trial.

After all parties had a full opportunity to present evidence, the Court took a brief recess to review the evidence, conduct legal research, and deliberate. The Court thereafter reconvened the hearing and announced its Findings of Fact, Conclusions of Law, and Order. This Judgment Order is provided as a summary of those Findings and Conclusions and to satisfy the Court's obligation under Vermont Rule of Civil Procedure 58. To the extent that the reader wishes to review the Court's Findings and Conclusions, the reader is referred to the audio record of the July 7, 2015 hearing.

### Summary of Findings of Fact

1. Jacqueline Couture owns 31.6 ± acres, consisting of two pre-existing lots, at 70 Locust Lane, Ferrisburgh, Vermont ("Property").

2. Barry Estabrook and Rux Martin have lived on 20 ± acres on Marsh Hill Road, abutting the Property's northeastern boundary, since 2002.

3. Ms. Couture seeks approval for a 3-lot subdivision on the Property. Lot 1 is proposed to be located on 10.21 ± acres along the western boundary of the Property; Lot 2 is proposed to be located on 11.11 ± acres in the southeast of the Property; and Lot 3 is proposed to be located on 10.29 ± acres in the northwest of the Property.

4. At present, there exist two single family homes on the Property: one was built on the proposed Lot 1 in 1989 and the other, where Ms. Couture now lives, was built on the proposed

Lot 3 in 2014. Ms. Couture proposes the construction of an additional single family home on Lot 2 for her son.

5. These structures add less than an acre of impervious surface area to the Property and therefore do not trigger State Stormwater permit requirements.

6. There exist five drainage swales on the Property, running both vertically and horizontally along the middle of the Property, as orientated on the project site map, as well as along the western boundary.

7. The Town Plan indicates the presence of Class II wetlands and hydric soils on or in the vicinity of the Property.

8. According to Jason S. Barnard, a licensed wastewater systems designer, and Michael Gervais, a licensed site surveyor, there are no hydric soils in the vicinity of the houses or septic locations, nor at any test pit locations on the Property. Any patches of hydric soils on the Property are small, away from the areas proposed for development, and not prone to flooding.

9. According to the Vermont Agency of Natural Resources Flood Survey Map, there are no special flood hazard areas on the Property.

10. Ms. Couture testified that she has lived on the Property since 1989 and in that time has not seen any flooding in either of the houses. She further testified that even when it rains very heavily, water drains off the Property very well.

11. In the past, Ms. Couture has rented her land to farmers to grow corn, alfalfa, and hay and the farmers rarely have problems operating their farm equipment due to flooding; the last farmer to have a problem on the Property with their equipment due to a wet field was approximately 25 years ago.

### Summary of Conclusions of Law

Mr. Estabrook's clarified Questions 1(3) and 1(7) are the sole legal issues remaining for resolution, raising §§ 410.1 and 450 of the Town of Ferrisburgh Subdivision Regulations ("Regulations"), per the Court's determination on pre-trial motions. See In re Couture Subdivision, No. 53-4-14 Vtec, (Vt. Super. Ct., Envtl. Div. June 17, 2015)(Durkin, J.). Regulations § 410.1 states that "[a]ll land to be subdivided shall be, in the judgment of the Commission [or this Court on appeal], of such a character that it can be used for building purposes without

2

danger to public health or safety, or to the environment. Land subject to periodic flooding, poor drainage . . . shall not ordinarily be subdivided." Regulations § 450 states that "[a]n adequate surface storm water drainage system for the entire subdivision area shall be provided" and that "[w]here a subdivision is traversed by a water course or drainage way, there shall be provided a drainage easement of such width to encompass the 25-year flood area of such water course, such easement shall be indicated on the final plat."

Based on the credible evidence presented at trial, it is clear that although there are patches of hydric soils on the Property, these patches are small and not in the vicinity of any proposed development. Additionally, the credible evidence demonstrates that the Property is neither prone to flooding nor subject to poor drainage. Further, it is clear from the credible evidence that the existing drainage swales on the Property are adequately sized to convey a 25-year storm event without exceeding their banks. For these reasons, the Court concludes that the proposed subdivision will not cause danger to the public health or safety and that the surface stormwater drainage system for the proposed subdivision is sufficient.

The proposed subdivision is, therefore, **APPROVED** with the following conditions: First, Ms. Couture, her successors, and assigns must maintain a 20-foot wide drainage easement measuring 10 feet on each side of the swale or ditch, which shall be depicted on the final site plan submitted to the Town for recording. Second, in its final form the survey must be sealed, reprinted on mylar, and recorded in the Town of Ferrisburgh Land Records within 30 days of this decision becoming final.

Electronically signed on July 22, 2015 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division